First, Your Honor, I'm sorry I couldn't accommodate the Court and come yesterday but I had another case. No problem. We're happy to accommodate you. Thank you, Your Honor. Your Honor, we have a case here which I think is a unique fact pattern where when Judge White dismissed the case, the first petition, it was already at that point exhausted. Since that decision by the judge, which I think by itself was an error, we have the U.S. Supreme Court case of Rines and the Ninth Circuit case of Jackson v. Rowe that I talk about in my briefs, which I think makes it clear that since Judge White, whether or not he was right to dismiss the case under the prevailing law at the time, didn't have the benefit of the Rines decision and the case should then be remanded back to him for application of that case, again, the distinctive fact pattern we have here I think makes it an even stronger case for remanding because I believe this Court normally remands to the district court to evaluate whether the petitioner could be timely in bringing the case back after exhausting. Here, he's already exhausted. Let me ask you this, counsel. One of the unresolved issues, I guess, in the jurisprudence is what the obligation would be on the district judge to, in essence, give legal advice as to the consequences of various choices that are available. And in this case, as I understand the record, Judge White did ask your client to make a choice as to whether he wanted the case dismissed or whether he wanted to simply dismiss those claims that were not exhausted and proceed with the claims that he had exhausted and gave him 30 days to respond. And am I correct that the record is clear that your client never responded to the Court's invitation? No, he did not, Your Honor. Well, Your Honor ---- Within the 30 days? He did not respond. Instead, he waited for the dismissal and then refiled the petition. Okay. So then he has to show, as I understand it, he's got to show that he's entitled to equitable tolling. And that gets me to my second question, which is, can you outline for me what the evidence is that would convince me that he exercised due diligence entitling him to equitable tolling on these facts? Right, Your Honor. And if you could, I'm particularly concerned about the reason for the long delay following the conclusion of the California State habeas proceedings and his inaction for four years before bringing his Federal habeas claim. Your Honor ---- Do you understand my question? Yes, Your Honor. One thing I would point out is the Petitioner did file it within the one-year statute of limitations. He was working on his State case. It did take him a while. The district court ---- What was he doing on the State case? My question really is, what was he doing during that four-year period before he filed? And, Your Honor, to answer your question, I wasn't below. I have talked to him, but it's off the record, and it's not listed anywhere in the record. So there's nothing in the record that shows what he was doing or anything? Because that issue wasn't litigated in the district court. The district court never considered equitable tolling here, never asked for an explanation for that. The Attorney General does list it in his brief here. But all I know is he was working on his case. He did file petitions, and he did finish and get to the U.S. district court within the one-year statute of limitations. The district court ruled ---- I don't think there's any ---- I guess the concern I have is he did ---- he clearly filed before April whatever the date was in 1977, and I guess he got the advantage of the mailbox rule to get it in right under the wire. But he now needs equitable tolling in order to save his claim from dismissal under AEDPA. And so I think we do have to look back at what he was doing before he filed, don't we, in order to determine whether he was exercising due diligence? Well, if the Federal court does, then I would ask if he remanded to the district court for a hearing on that, because it's just not in the record here. I can tell you I've talked to him, and he said he was working on his claims and he had trouble with the lockdown. But doesn't he have to make a preliminary showing? I mean, I can understand why he would want to make the record, but doesn't he at this point have to present an affidavit or something to the district court to justify the remand for the hearing? Really, Your Honor, I don't think so, because the critical period, I don't think, is that four-year period. It's the one-year period. He's under AEDPA. There's no deadline in how long he has to take to exhaust his State appellate issues. The only deadline is the one year between the final thing in the Supreme Court of California and the filing of his habeas petition. And that's clear he met. So I don't think the if-able told him. In fact, we're mixing and matching, Counsel, to try to impose an obligation on him to justify what he was doing during the period when there was no Federal statute of limitations would actually be contrary to our structure, wouldn't it? I think it is, Your Honor. The critical issue to me here is once he's finished, and he even under the current AEDPA, there's no deadline of how long he has to take in State court. Once you're done in State court, you have a year to get to Federal court. And that he's satisfied. But the problem is that we don't know when he was done in State court, do we? I mean, for all we know on this record, he was done four years earlier and did nothing until Congress enacted AEDPA and set a drop-dead date of one year after the effective date of the statute. Even if that's true, he then met the one-year deadline. But that doesn't answer the equitable tolling argument, does it? Because you're basically pleading extraordinary circumstances here, and part and parcel of extraordinary circumstances is to explain why he waited so long to seek Federal habeas relief. And again, Your Honor, on this record, I simply can't answer that question. And I, again, I don't think that answers the question of equitable tolling, because the issue here is whether he's entitled to equitable tolling to bring the second statute back to the filing date of the first statute. Sotomayor, which would be true if the dismissal were erroneous, which was your original point. Which I believe it was erroneous. I'm noting from the record, I was looking below, the Anthony v. Camber case by this circuit had already been decided by the time the district court made its decision here. And, in fact, it had been brought to the judge's attention by the Attorney General in their motion to dismiss that's contained at the IRF-CPSA record at 178. So the district court was aware of the holding of Anthony v. Camber, which is, I think, pretty clear that you have to use your discretion if you're district court to grant the stay. I would also ask you about the case of Jefferson v. Budge, which you cited. And Jefferson comes, of course, after Ford v. Pyler, and it comes after Rinds v. Weber. So I think the one case we have that's after this long line of cases about the mixed dismissals, in that case, the Court of Appeals determined that the judge's mistake in dismissal actually constituted the extraordinary circumstances for equitable tolling, and then granted equitable tolling at the appellate level. Are you asking for a remand, or are you asking for determination along the lines of the Jefferson v. Budge approach? My fallback decision would be for my remand, but my primary position is that under Jefferson v. Budge, which I think builds on the cases going back to Anthony v. Camber, the judge's decision was just wrong at that time. It's also wrong for a second reason, I believe. Why is it wrong, though? He offered him, he said to him, what do you want me to do? Do you want me to dismiss your unexhausted claims, or do you want me to just dismiss the whole case? And your client didn't do anything by the 30-day deadline. I think it's wrong for two reasons. One, I think he was wrong to rely on the Fifth Amendment to be exhausted and make his decision. Two, although he gave him those two options. But at that time, the case was dismissed. So the fact that the claims were exhausted is irrelevant if the statute of limitation has run. Well, you know, I agree and I disagree. I don't think it is. If the judge has an ability to stay a case to allow exhaustion, he must have the discretion to relate back and say, well, wait, now it is exhausted. I don't think the law requires that he has to turn a blind eye to the fact that he's dismissing what is now, in essence, an exhaustive petition. But there's, again, going back to my second, there's two reasons I think it's wrong, not only that, but also because he's ignoring the holdings of such cases as Anthony v. Canberra and not giving him three choices. The judge does not under Pilfer have to give him legal advice, but the judge here gave incorrect legal advice. He never mentioned the third option, that there was a provision that he could request to stay. The judge is going to tell him you can do one of two things, but he admits the third thing, which the judge knows is out there. That, I think, is incorrect legal advice, and he's actively misleading the Petitioner. Counsel, you have just a few seconds left, if you'd like to save some time for rebuttal. I will. Thank you, Your Honor. Mr. Rose. May it please the Court. Counsel, I have a question for you. When the Petitioner originally filed his, what he called a motion to dismiss without prejudice and leave to exhaust the remedies in the lower court, why shouldn't the district court have interpreted that to be, in essence, a request for stay in abeyance? Because here's a pro se litigant who's basically saying, I want an opportunity for the Federal court to look at all of my claims, and I want to go back to State court and exhaust whatever I have to, but I don't want to be prejudiced. I mean, it's not artfully done, but why shouldn't that be interpreted as a request for stay in abeyance, which we now know is what a court should do when faced with this kind of situation? That's a very good question, Your Honor. And I suppose the Court very well could have interpreted it that way. It wasn't stated that way by the Petitioner. As Plyler v. Ford makes very plain, and as Bramble v. Duncan in this circuit makes very plain, the district court only has the obligation to give the two pieces of advice, not the three. I'm not talking about advice. I'm talking about action. When the district court acted, why wasn't the proper action, if that is at least a plausible interpretation of the Petitioner's request, without the question of advice at all, why shouldn't the district court simply have said, I will hold this in abeyance and stay this while you go back and exhaust, and then we'll be back here and you can have your day in court? Well, there are at least two questions in that question. One is, why didn't the Court interpret it that way? And the other question is, why didn't the Court say the case? And those are two very different questions. To the first question, I don't really have a really – if that's the way the Court views that question, if the Court thinks that it's obvious that that was what was intended and that in equity the Court should have interpreted it that way, I don't really have a strong argument why, in technical terms, the Petitioner didn't make the exact right statement and say the magic word, stay and obey. So, if the Court thinks that's reasonable, I really don't have a strong argument against that interpretation. Well, let me follow up. Let me follow up on that a little bit. One of the other oddities of this case is that by the time the district court made its decision, and of course we all know in hindsight it's without all the benefit of the future Supreme Court rulings, he didn't actually rule on the motion to which Judge Graber refers, which is kind of odd. Instead, he jumps forward and says, well, I can't really count your post-exhaustion because the law requires me to look at it as of the time of filing. And you could say maybe he denied the first motion, the motion to dismiss, by the pro se Petitioner. You might say he denied it by implication, but he actually didn't rule on that motion. Do you have any comment on that? Well, it's perhaps a good thing he didn't rule on that motion. And in fact, there's law, circuit court law, that the Court didn't really have to rule on that motion, that it's a self-executing motion. And in fact, the request to for voluntary dismissal should have been self-executing and the case should have ended at that moment. So in that sense, Judge White gave the Petitioner a break because that should have ended the case. A voluntary dismissal would have ended the case and would have ended an argument about whether the statute of limitations had run six days after that voluntary dismissal. So in fact, the Petitioner got a break, Judge White had to look at that motion. He's not asking for a Rule 41 dismissal. What he's asking is something in addition, and that is really he wants this to be determined so he actually has the leave to exhaust. So it seems to me it's not a normal civil dismissal that you would ask for under Rule 41 as I read it. But maybe I'd be interested in your thoughts on that as well. Well, it's all open to interpretation. Judge Graber has an interpretation, a possible interpretation, that this was a veiled request for stay in abeyance. Your possible interpretation is that it wasn't really a voluntary dismissal. It was a voluntary dismissal plus something. I would argue that it was easily interpretable as just a plain voluntary dismissal request, which should have ended the case, and then Petitioner would have totally been out of luck, and six days later his rights would have been done. I'd prefer really to talk to you. No, I'm just going to say there is a pretty well-established Ninth Circuit rule of giving the benefit of the doubt to pro se litigants in interpreting, you know, certainly within the realm of plausible. We don't go making up things that people haven't done, but where they're trying to request a type of relief, we do have a rule that we construe things liberally in their favor. As I say, I'm not going to press technical issues that strongly in this case. I think there's much better grounds on which to decide this case, which is that by the time he made that request, the horse was out of the barn. It was much too late to make that request. I think Judge White was absolutely right that you can't talk about what was happening in 1999 and say that this is now that it's in late 1999, he's exhausted, so everything else is forgiven beforehand. In 1999, it was already eight — it was already 11 years after his State proceedings had ended. In 1988, his two rounds of State direct appeals had ended. He waited a year and a half after that to file his first State habeas petition. Then after his first State habeas petition in Superior Court, he waited 11 more months before he filed his first State habeas petition in the court of appeal, for up to two and a half years of completely unjustifiable delay. After his State round in 1993 was over, he waited another four years before he filed his first Federal petition. That's up to over six years of delay directly attributable only to his malfeasance. And when he finally did get around to filing in 1997 that Federal petition, four of the claims were unexhausted. He never claimed — he's never claimed that he didn't understand that exhaustion was necessary. He just had some story about how his jailhouse lawyer had omitted to file four claims. Although we know that's not true because his State habeas petition, his State Supreme Court habeas petition, was filed by an appointed, professional, experienced appellate lawyer who chose those two claims. He's never claimed that he didn't know that those claims needed to be exhausted. Those claims were chosen by his appointed attorney. So in 1997, when he finally files his mixed petition, that's when Judge White says, well, this is all ready. Why should I give him a stay in abeyance at this point? He's shown no good cause for stay in abeyance. He's got no extraordinary circumstances. He has already delayed this case for nine years after his State court appeals were done. And even then, now he's asking for more time to go back to State court to exhaust these four issues that he had nine years previously to exhaust had he wanted to. He never said he doesn't know how to speak English. Wait. Did Judge White — could you just help me out on that? Did Judge White actually say what you're saying, or is that an interpretation of the facts? I'm just trying to understand. I thought he didn't actually rule on equitable tolling. Well, he didn't rule on equitable tolling, and he didn't expressly rule on the good cause. But impliedly, in his ruling, I think there's reasoning there. And I think he's — in the case that he cited from, I believe it's the Fifth Circuit, I think the implication is clear that he didn't just knock this guy out of court, that he said there's no reason for any — and as this Court knows, in the Ninth Circuit, stay in abeyance procedure has been around for years. It was around for years before that. Federally, in other cases, authorized it. So I think — Well, if that's true, then why isn't opposing counsel correct that the judge, if he was going to give choices, would have had to mention that choice? Well, Plyler makes a claim that that is not a necessary option, and Brambles v. Duncan in this — in this circuit has recently asked for Plyler. Plyler has said that the Court only has to give the two possibilities, either go ahead with your two exhaustive claims or dismiss the entire thing and come back. Plyler and Brambles specifically say the Court does not have to give the third option of stay in abeyance. Brambles is controlling. I believe Brambles completely controls this case and disposes of it. But even — as I say, even after that, Petitioner continues his dilatory behavior. After we filed our motion to dismiss for lack of exhaustion, he took five more months before he went back to the State supreme court. All of these delays and the possibility of the — of the mixed petition delaying things to 2006, where we are now, 24 years after the crime was committed, these are all directly attributable to the fact that Petitioner didn't exhaust his claims. The delays are his. The delay up to 1997 was directly attributable to him. And the fact that we're still litigating these procedural points is directly attributable to the fact that he allowed this issue to float in the case by not exhausting his claims when he — when he had nine years, or at least, you know, nine years before his 1997 first Federal petition to exhaust his claims. So we're asked — we're talking about equitable — and we certainly are talking about equitable tolling here because we're not here on the first petition. If you look at the number of the case, we're here on the — on the 2000 petition, which occurred after the first petition was dismissed because, once again, Petitioner was given 30 days to respond and did nothing for three months, and the Court dismissed the — the case. And now we're winding on and on after. He could have appealed from that decision. He did not. Rather, he filed a new claim. So everything he's done all along the way, he's had — he's had appointed attorneys in the State — in the State superior court and in the State supreme court. He had the benefit of the extended statute of limitations all the way until 1997. Every step of the way, when on all these turnarounds, the Supreme Court has said that 30 days and this Court — and this Court has said 30 days is probably going to be adequate. He's never taken 30 days. He takes years and years, months and months to do all of these turnarounds. And for this Court to grant equitable tolling because perhaps Judge White didn't grant him a stay in abeyance based on good cause, at minimum, we would request that the case be remanded to Judge White for a — for a ruling on whether good cause was present in 1997, not in 1999. In 1997, nine years after the State court appeals were done. But we would say that the record is fully sufficient for this Court to say there's no extraordinary circumstances for equitable tolling in this case. Thank you, counsel. Mr. Jordan, we'll give you two minutes for rebuttal since we used a lot of it with questions. Thank you very much, Your Honor. I would just note that in 2001, when the district court judge dismissed the second petition, the petitioner had already exhausted his claims. So under Rindge, you would be asking whether he could do that within 30 days after it gets back to the district court. He's already done that. Since the AEDPA or the AEDPA statutes have come into effect, the petitioner has moved. He has met the deadline. He met the one-year deadline. Although the attorney general says he took five months to exhaust, he did that while his petition was still pending in the district court. He didn't wait for a ruling. He went ahead on his own. Well, you got me totally confused. When he filed the second petition, the AEDPA clock had run, right? So what are you talking about, five months and how long? While the second petition was pending, while the motion to dismiss was pending by the attorney general, the AG says he took five months then. The AG pointed out there was unexhausted petitions. He moves to dismiss. Within five months, I believe the attorney general says, the petitioner has exhausted. He claims that's dilatory. I claim he's acting before Rindge even requires him to do that. He's acting while the district court is still considering. But we would never get there unless we agree that equitable tolling applies in order to save the second petition, right? Because you don't dispute that if he doesn't get equitable tolling, his second petition is way out of time. I agree. We need equitable tolling, and under Rindge, he's entitled to equitable tolling. The district court would then give him 30 days to refile, but he's already done that. He already has exhausted. So the petition is now fully exhausted. There'd be no more delay. What's your response to the attorney general's argument that at the time the first petition was dismissed, notwithstanding the stay-in-abeyance potential, there was there had been sufficient delay by that time that stay-in-abeyance was not the proper response to the request, rather that even if it had been construed that way, it should have been denied because there was no good cause for the delay up till that point in not exhausting. At least that's how I understand their argument. What is your response to that? Had the record demonstrate diligence up to the point of that initial dismissal of the first Federal case? I believe it does, because the key point here is whether he met his one-year statute of limitations under AEDPA, which he did. Once the Federal government imposed statute of limitations, he met those. Before, I thought the question that we're wrestling with is what did he do in this interim of years, the state claim? To deal with his state claim, not to deal with his Federal claim. That's the question we're wrestling with. If that is what the case resolves on, then I would have to say we need to remand it for a hearing, because it's just not resolved below, whether he was having difficulties with his defense counsel, whether there was issues of lockdowns, because the district court never reached that issue of equitable tolling. But I do say my stronger position is that the judge, the first dismissal, regardless of the time before that, was erroneous under Anthony v. Canberra and Smith v. Rattel. If that's what I would submit it. Thank you, counsel. The case just argued is submitted, and we are adjourned. And we appreciate the helpful arguments of both counsel. Thank you.
judges: Graber, McKeown, Tallman